UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

LATIN MARKETS BRAZIL, LLC D/B/A MARKETS GROUP,

                            Plaintiff

                                                            Case No. 18-cv-02089-GHW-RWL

-against-

PABLO OLIVEIRA,

                            Defendant.

-------------------------------------------------------------------x

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Defendant, Pablo Oliveira ("Defendant" or "Mr. Oliveira") submits the following Reply to Plaintiff's Response to Defendant's Local Rule 56.1 Undisputed Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment to dismiss Plaintiff Latin Markets Brazil, LLC's (Plaintiff or "LMB") claims against Defendant.[1]

References to Deposition transcripts, page and line numbers are noted as follows: Timothy John Raleigh, Defendant's Ex. D – TJR Tr. pp:line number(s); Adam James Raleigh, Defendant's Ex. E – AJR Tr. pp:line number(s); Pablo Oliveira, Defendant's Ex. F - Oliveira Tr. pp:line number(s).

Plaintiff's Response to Defendant's Statement of Undisputed Material Facts in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response") violates Local Rule 56.1 and should be disregarded.[2] Each statement of material fact set forth in

---

[1] The defined terms in the moving Brief in Support of Defendant's Motion for Summary Judgment are adopted herein.
[2] District courts are "free to disregard" improper Rule 56.1 statements. Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800 (LMM), 2007 WL 1771498, at *2 (S.D.N.Y. June 18, 2007); see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).

1

Defendant's Local Rule 56.1 Statement ("Defendant's 56.1 Statement") should be deemed admitted for purposes of Defendant's Motion for Summary Judgment.

First, Plaintiff's Response violates Local Rule 56.1 by consistently failing to "specifically" controvert the material facts set forth in Defendant's 56.1 Statement. Local Rule 56.1(c) (emphasis in original). Rather than following to the requirements of Local Rule 56.1, Plaintiff inappropriately uses their Response as a vehicle for legal argument. This District's cases consistently reject that tactic, and it should be rejected here as well. *Amalgamated Lithographers of Am. v. Unz & Co. Inc.*, 670 F. Supp. 2d 214, 217 (S.D.N.Y. 2009) (striking sua sponte Rule 56.1 statement where "[v]ery little of it is statements of fact; for the most part, it is legal argument."); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, No. 00 Civ. 4763 RMB JCF, 2006 WL 2136249, at *3 (S.D.N.Y. Aug. 1, 2006) ("Rule 56.1 statements are not argument. They should contain factual assertions with citation to the record. They should not contain conclusions.") (emphasis in original) (citation omitted); *LaPine v. Seinfeld*, No. 08 Civ. 128(LTS)(RLE), 2009 WL 2902584, at *4 (S.D.N.Y. Sept. 10, 2009) (striking elements of Rule 56.1 statement that constitute legal argument); *Pacenza v. IBM Corp.*, No. 04 Civ. 5831 (SCR), slip op., at 3, 8 (S.D.N.Y. July 26, 2007) (Schapiro Opp. Ex. 3) (striking "impermissible argument" and "conclusory allegations" from Rule 56.1 Statement); Rowe Entm't, Inc. v. William Morris Agency, Inc., No. 98 Civ. 8272 (RPP), 2005 WL 22833, at *1 n.1 (S.D.N.Y. Jan. 5, 2005) (striking Rule 56.1 statements that are "argumentative and conclusory").

"The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001). By failing to respond straightforwardly to the undisputed material facts set forth in Defendant's 56.1

Statement, and by citations to non-responsive evidence, Plaintiff seeks to create the appearance of a factual dispute. Plaintiff's Response improperly subjects the Court to the burden of sifting through the record seeking evidence that may support Plaintiff's baseless assertions in their Opposition to Defendant's Motion for Summary Judgement. *U.S. Info. Sys., Inc.*, 2006 WL 2136249, at *3 ("[T]he non-moving party must identify controverting evidence for the court.").

Second, Plaintiff's Response fails to demonstrate a genuine issue to be tried as to any of the material facts set forth in Defendant's Local Rule 56.1 Statement.

Plaintiff expressly admits as undisputed the facts in ¶¶ 1 - 4, 7, 10, 11 -14, 16, 19, 23, 33, and 36.

Other facts listed in Defendant's 56.1 Statement are only disputed as to their "materiality" by Plaintiff. The facts themselves are not "specifically controverted" by Plaintiff, and thus are deemed admitted under Local Civil Rule 56.1(c). Moreover, to the extent Plaintiff argues a fact is immaterial, even if Plaintiff did dispute that fact, it could not by definition raise a genuine dispute of material fact. These facts are ¶¶ 5, 6, 8, 12 - 13, 15, 17 - 18, 20, 22, and 38.

The remaining facts are also not genuinely disputed by Plaintiff. Many of these facts are deemed admitted under Local Civil Rule 56.1(c) because Plaintiff has not "specifically controverted" them. Indeed, most of the responses in Plaintiff's Response do not state whether a fact is controverted or uncontroverted but instead launch directly into arguments from Plaintiff's brief and/or new arguments that have no direct relation to the material fact. To the extent Plaintiff's responses do purport to dispute facts, the responses do "not evince a dispute that was genuine." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 314 (2d Cir. 2008) (responses that use the word "disputed" but do not demonstrate that dispute is genuine cannot defeat summary judgment); UMG Recordings, Inc. v. Veoh Networks Inc., 665 F. Supp. 2d 1099,

3

1101 n.1 (C.D. Cal. 2009) (court disregards plaintiff's immaterial disputes, "which do nothing more than strain the Court's resources and distract from the real issues in this litigation"). Plaintiff does not explicitly controvert these facts with admissible evidence.  And, with respect to many of these facts, Plaintiff only disputes the facts "to the extent" they suggest a particular inference with which Plaintiff disagrees, even though the proposed facts identify no such inferences.  Thus, these facts are also not "specifically controverted" by Plaintiff and are deemed admitted under Local Civil Rule 56.1(c). These facts are ¶¶ 9, 16, 24, 31 - 32, 34 - 35, and 37.

Accordingly, none of Plaintiff's responses raise a genuine issue of material fact to be tried.

Defendant's Reply to Plaintiff's Response is covered in the footnotes of the table below.

| **Defendant's proposed undisputed material facts** | **Plaintiff's Response and supporting Evidence** |
| --- | --- |
| 1. Plaintiff Latin Markets Brazil, LLC D/B/A Markets Group ("LMB") is a limited liability company duly organized under the laws of the State of New York with its principal place of business at 44 East 32nd Street, New York, New York. Amended Complaint, at ¶ 1, annexed herein as Exhibit ("Ex.") A. | Admitted |
| 2. Defendant Pablo Oliveira ("Mr. Oliveira") is an individual currently residing in Florida, and a former resident of New York State. Oliveira Tr. pp. 4:14-15, annexed herein as Exhibit F. | Admitted |
| 3. LMB is an executive forum provider. Amended Complaint, at ¶ 4, Ex. A. | Admitted |
| 4. Adam James Raleigh ("CEO" or "AJR") has been LMB's Chief Executive Officer from 2009 through the present date. Timothy John Raleigh ("CFO" or "TJR") is LMB's Chief Financial Officer. See Ex. D, TJR Tr. 33:7-10, Ex. E – AJR Tr. pp. | Admitted |

4

| | | |
|---|---|---|
| | 101:10-12. | |
| 5. | Mr. Oliveira signed a five page offer of employment, on the letterhead of Latin Markets Brazil, dated January 18, 2013. Employee Offer Letter ("Offer Letter") annexed herein as Ex. C. | Admitted in part, Disputed in part. Plaintiff does not dispute that Mr. Oliveira signed a five page letter on the letterhead of Latin Markets Brazil, dated January 18, 2013. To the extent that Defendant avoids characterizing this "Offer" as an employment agreement, Plaintiff maintains that it was as a matter of fact an agreement under which Defendant was hired as a full time employee of Plaintiff at an initial salary of $10 per hour.[3] |
| 6. | The letter offered Mr. Oliveira compensation of $10.00 per hour. The letter did not contain a list and/or description of Mr. Oliveira's job duties and responsibilities. Offer Letter at pg. 1, Ex. C. | Admitted in part, Disputed in part. Plaintiff asks this Court to disregard as irrelevant the statement that "The letter did not contain a list and/or description of Mr. Oliveira's job duties and responsibilities".[4] Plaintiff asserts that the employment *agreement* provided for initial compensation of $10 per hour. Offer Letter at pg 1, Defendant's Ex. C |
| 7. | The letter stated the following: …is not intended to be and should not be construed as creating a contract guaranteeing employment for any specific duration. You understand and agree that the relationship between you and LMB is one of at will employment. Offer Letter at pg. 1, Ex. C. | Admitted However, Plaintiff asks this Court to disregard as irrelevant that Defendant's employment was at will, as it does not exclude the existence of a valid and enforceable employment agreement.[5] |
| 8. | The letter contained a list of covenants, including a "non-solicitation of clients and contacts" and a "non-competition." The letter did not contain a definition of the term "solicit," "competitor," "service", "duties" and "competition." Offer Letter at pgs. 3-4, Ex. C. | Admitted in part, Disputed in part. Plaintiff asks this Court to disregard as irrelevant the statement that "The letter did not contain a definition of the term 'solicit,' 'competitor,' 'service', 'duties' and 'competition'", as these are all plain English terms which Courts are equipped and authorized to interpret without any requirement that they be defined in the underlying |

---

[3] Defendant objects to this response on the grounds that Plaintiff improperly states a legal argument, and therefore, the response should be stricken

[4] Defendant objects to this response on the grounds that Plaintiff improperly argues the relevancy of an undisputed fact, therefore, the response should be stricken.

[5] Defendant objects to this response on the grounds that Plaintiff improperly argues the relevancy of an undisputed fact, therefore, the response should be stricken.

| | | |
|---|---|---|
| | | agreement.[6] |
| 9. | The letter did not state and/or identify the compensation that Mr. Oliveira would receive in exchange for compliance with the above covenants. Offer Letter, Ex. C. | <u>Disputed</u><br>The letter agreement provides that Defendant would receive compensation of $10 per hour. Offer Letter at pg 1, Defendant's Ex. C |
| 10. | The covenants did not state and/or identify a geographic scope. Offer letter at pgs. 3-4, Ex. C. | <u>Admitted</u>, however Paragraph 10 should be disregarded as false and irrelevant, and as seeking a conclusion of law, to the extent it asks this Court to find that the non-solicitation and trade secrecy clauses of the Employment Agreement must contain a geographic limitation to be enforceable[7] |
| 11. | Mr. Oliveira was employed by LMB from January 2013 to September 2016. Declaration of Pablo Oliveira ("Oliveira Declaration") at ¶ 12. See Ex. F - Oliveira Tr. pp. 27:19-21. | <u>Admitted</u> |
| 12. | During his employment at LMB, Mr. Oliveira used publicly available internet websites, Google and LinkedIn to perform his job and collect data (i.e individual's name, company name, telephone number, company address and email address). See Ex. F – Oliveira Tr. pp. 33:19 - 34:7, Ex. D - TJR Tr. pp. 80:23 – 81:4, Oliveira Declaration at ¶ 16 | <u>Admitted in part and disputed in part</u>.<br>As a sales employee of Plaintiff, Defendant was trained to do specialized searches on available Internet and LinkedIn materials, to generate raw leads which were then qualified via a process of sending a specialized, carefully drafted email. Individuals who responded to this email were then called by Defendant and cultivated to provide nonpublic information about themselves and their companies, including their job description and authority to buy Plaintiff's services, the company's organization chart, its prior attendance at similar events, its budget, ability of employees to travel to events, and the individual's own hobbies and sports.[8] Declaration of Timothy Raleigh ("Tim Declaration") at ¶¶ 10 -15. |

---

[6] Defendant objects to this response on the grounds that Plaintiff improperly argues the relevancy of an undisputed fact, therefore, the response should be stricken.

[7] Defendant objects to this response on the grounds that Plaintiff improperly argues the relevancy of an undisputed fact, therefore, the response should be stricken.

[8] Defendant objects to this response on the grounds that Plaintiff's response is not based on personal knowledge or Defendant's testimony, and is nothing more than a self-serving statement, therefore, the response should be stricken. Affidavits submitted by a party must be made on personal knowledge and must set forth facts that would be admissible in evidence. Rule 56(e)(1), FRCP

| | |
|---|---|
| 13. LMB used competitor's lists to formulate its own customer lists. Additionally, LMB induced its employees to obtain competitor's lists and offered to pay them $200.00 for each list that was obtained. A copy of AJR's email dated June 17, 2015 is annexed herein as Ex. K, Ex. D - TJR Tr. pp. 83:9-21, Ex. E – AJR Tr. pp. 116:20-24, 119: 3-11. | <u>Admitted in part and disputed in part</u>. Although Plaintiff did on occasion seek and use its competitor's publicly available information, such as attendee lists distributed at events, as sources of leads, to the extent Defendant utilized any such information, he emailed and called these individuals and developed nonpublic information about them in the same fashion any other leads were treated. Tim Declaration at ¶¶ 10 – 15.[9] Additionally, Defendant fails to assert that any particular customers of Plaintiff whom he solicited during the one year period were sourced from any such material. |
| 14. LMB's "customer lists" and data were stored and maintained on Excel spreadsheets. See Ex. F – Oliveira Tr. pp. 94:18-20. The spreadsheets were not marked "confidential" or "proprietary." Oliveira Declaration at ¶ 15. | <u>Admitted</u>, however Plaintiff asks this Court to disregard as misleading, irrelevant, and asking for a legal conclusion, the statement that "The spreadsheets were not marked 'confidential' or 'proprietary.'" There is no requirement that material be physically marked "confidential" or "proprietary" to qualify for protection under a nonsolicitation or trade secrecy clause. This assertion improperly asks for a legal conclusion that Plaintiff's trade secrets did not merit protection because they were not so marked. [10] |
| 15. LMB did not provide a cell phone to Mr. Oliveira. On certain occasions, he was required by LMB to use his personal cell phone to send emails, which included LMB data and "customer information." See Ex. F – Oliveira Tr. pp. 115:12-15; 116:14-17; Ex. E – AJR Tr. pp. 163: 22 – 164:5 (employees used their personal phones for work related e-mail). These emails were not marked "confidential" or "proprietary." Oliveira Declaration at ¶ 16. | <u>Admitted in part, Disputed in part</u>. Defendant was never "required" by Plaintiff to use his personal cell phone. Tim Declaration at ¶ 12.[11] Plaintiff asks this Court to disregard the statement "These emails were not marked 'confidential' or 'proprietary'" as irrelevant, misleading and asking for a legal conclusion. This statement is effectively a *non sequitur*. Salespeople do not mark their emails to clients "confidential" or "proprietary" as this would intimidate the client and interfere with the sale. Tim Declaration at ¶¶ 10 – 15[12] |

---

[9] Defendant objects to this response on the grounds that Plaintiff's response is not based on personal knowledge or Defendant's testimony, and is nothing more than a self-serving statement, therefore, the response should be stricken.
[10] Defendant objects to this response on the grounds that Plaintiff improperly states a legal argument and the relevancy of an undisputed fact, and therefore, Plaintiff's response should be stricken.
[11] Defendant objects to this response on the grounds that Plaintiff's response is not based on personal knowledge or Defendant's testimony, and is nothing more than a self-serving statement, therefore, the response should be stricken.
[12] Defendant objects to this response on the grounds that Plaintiff improperly states a legal argument and the relevancy

| | |
|---|---|
| | Defendant is asking this Court to make a bizarre legal finding that a salesperson's failure to mark emails to a customer confidential or proprietary means that nonpublic information in those emails developed at the company's expense cannot qualify as trade secrets, and justifies the later violation of a one year nonsolicitation clause as to those clients |
| 16. Mr. Oliveira never removed hard copies of LMB "customer lists" or other data or downloaded LMB "customer lists" or other data to his personal email, computer or any other electronic device, at any time during his employment with LMB. See Ex. F – Oliveira Tr. pp. 114:14 -115:5, 117:2-15, Oliveira Declaration at ¶ 17. | Disputed<br>Defendant himself contradicts the assertion that he makes that he "never removed hard copies of LMB 'customer lists' or other data or downloaded LMB 'customer lists' or other data to his personal email, computer or any other electronic device," by the statement in paragraph 15 that he did in fact store such data on his personal cell phone.[13] This statement is otherwise misleading and false because Defendant had in his own memory a knowledge of names of and nonpublic information about Plaintiff's customers. [14]Tim Declaration at ¶ 26. |
| 17. Before he forwarded his notice of resignation to LMB, on September 22, 2016, TRJ sent an email to Mr. Oliveira that stated that "I will fucking kill you if you go to work with Will and Charles." Will and Charles were former LMB employees that started their own company. A copy of TJR's email dated September 22, 2016 is annexed herein as Ex. G, Oliveira Declaration at ¶ 19. | Admitted in part, Disputed in part.<br>Paragraph 17 should be disregarded as irrelevant and prejudicial in its entirety as it is not probative of any claim or defense in this action. In any event, Mr. Raleigh made this statement in jest to an individual he regarded as a friend.[15] Tim Declaration at ¶ 38. |
| 18. On September 23, 2016, Mr. Oliveira spoke to TJR about his resignation, and he was told that "a non-competition clause is used to jam the person up," and that the cost to defend a non- compete lawsuit "is going to hurt a person more than a | Admitted in part, Disputed in part<br>Paragraph 18 should be disregarded as irrelevant and prejudicial in its entirety as it is not probative of any claim or defense in this action. In any event, Mr. Raleigh stated to Defendant in effect that if he breached his |

---

of an undisputed fact, and therefore, Plaintiff's response should be stricken.
[13] Plaintiff misrepresents an undisputed fact. Defendant never represented that he "stored" customer lists or other data on his phone. Therefore, Plaintiff's response should be stricken.
[14] Defendant objects to this response on the grounds that Plaintiff's response is not based on personal knowledge or Defendant's testimony, and is nothing more than a self-serving statement, therefore, the response should be stricken.
[15] Defendant objects to this response on the grounds that Plaintiff improperly argues the relevancy of an undisputed fact, therefore, the response should be stricken.

| | |
|---|---|
| company." See Ex. D – TJR Tr. pp. 160:18-21, 162: 9-16, Oliveira Declaration at ¶ 21. | employment agreement, Plaintiff would sue him—a statement Plaintiff was entitled to make in an exit interview with a departing employee.[16] Tim Declaration at ¶¶ 38. |
| 19. In September 2016, Mr. Oliveira resigned from his position with LMB. A copy of Mr. Oliveira's resignation letter is annexed herein as Ex. H, Oliveira Declaration at ¶ 18 | <u>Admitted</u> |
| 20. On September 2016, Mr. Oliveira founded LinkBridge Investors LLC ("LinkBridge"), an investor relations company incorporated in the State of New York. See Ex. F – Oliveira Tr. 97:13- 16, 98:18-21. Oliveira Declaration at ¶ 22. | <u>Admitted in part, Disputed in part</u>. On September 19, 2016, 4 days before tendering his resignation, Defendant formed the corporate entity he would later use to sponsor real estate investment events substantially similar to those he had sold [17]and supervised as an employee of Plaintiff. NYS Department of State entity information Plaintiff's Exhibit F; Tim Declaration at 23. |
| 21. In May 2018, LinkBridge ran their first conference, the Global Investor Annual Meeting.<br>See Ex. F – Oliveira Tr. pp. 100:11-13. Oliveira Declaration at ¶ 23. | <u>Admitted</u> |
| 22. Prior to the event, Mr. Oliveira and his staff built lists of names for the event from Google and LinkedIn searches. See Ex. F – Oliveira Tr. pp. 139:18-25, Oliveira Declaration at ¶ 24. | <u>Admitted in part, Disputed in part</u>. In assembling lists of leads to qualify, Defendant included Plaintiff customers he remembered having contacted during employment, or whose contact information he had stored on his cell phone, as admitted in paragraph 15.[18] Tim Declaration at ¶ 26. |
| 23. Mr. Oliveira also purchased "lists and leads" from an outside company. See Ex | <u>Admitted</u>, however the fact that Defendant "also purchased 'lists and leads' from an |

---

[16] Defendant objects to this response on the grounds that Plaintiff improperly argues the relevancy of an undisputed fact, therefore, the response should be stricken.

[17] Defendant objects to this response on the grounds that Plaintiff improperly states a legal argument, and therefore, the response should be stricken.

[18] Defendant objects to this response on the grounds that Plaintiff's response is not based on personal knowledge or Defendant's testimony and is nothing more than a self-serving statement, therefore, the response should be stricken.

9

| | |
|---|---|
| F – Oliveira Tr. pp. 142:14-25. | outside company" is irrelevant to the extent that it does not contradict Plaintiff's assertion that, in addition to any other source of leads, he solicited Plaintiff's customers to attend his own event.[19] |
| 24. Since Mr. Oliveira did not have hard copies or electronic copies of LMB's "customer lists" or other data in his possession or control, he did not use them to build lists of names and contact information for the May 2018 event or any other event. See Ex. F – Oliveira Tr. pp. 114:14 - 115:5, Oliveira Declaration at ¶ 25. | <u>Disputed</u><br>This paragraph essentially repeats the assertions Defendant made in Paragraph 16. Defendant himself contradicts the assertion that he "never removed hard copies of LMB 'customer lists' or other data or downloaded LMB 'customer lists' or other data to his personal email, computer or any other electronic device," by the statement in paragraph 15 that he did in fact store such data on his personal cell phone.[20] This statement is otherwise misleading and false because Defendant had in his own memory a knowledge of names of and nonpublic information about Plaintiff's customers.[21] Tim Declaration at ¶ 26. |
| 25. On January 10, 2018, LMB commenced a lawsuit against Mr. Oliveira in Supreme Court, New York County alleging two causes of action; a) non-competition; and b) non-solicitation. On or about March 8, 2018, Defendant filed a Notice of Removal for the Supreme Court action to be removed to the United Stated District Court of the Southern District of New York. Docket Entry 1. | <u>Admitted</u> |
| 26. On or about June 8, 2018, LMB filed an Amended Complaint alleging two causes of action;<br><br>(a) breach of employment agreement and b) misappropriation of trade secret. Amended Complaint, Ex. A. | <u>Admitted</u> |

---

[19] Defendant objects to this response on the grounds that Plaintiff's response is not based on personal knowledge or Defendant's testimony and is nothing more than a self-serving statement, therefore, the response should be stricken.
[20] Plaintiff mispresents an undisputed fact. Defendant never represented that he "stored" customer lists or other data on his phone. Therefore, Plaintiff's response should be stricken.
[21] Defendant objects to this response on the grounds that Plaintiff's response is not based on personal knowledge or Defendant's testimony and is nothing more than a self-serving statement, therefore, the response should be stricken.

| | |
|---|---|
| 27. On or about June 13, 2018, Mr. Oliveira filed an Amended Answer denying the material allegations of the Amended Complaint. A copy of the Amended Answer is annexed herein as Ex. B. | Admitted |
| 28. Depositions of the parties were taken pursuant to Fed. R. Civ. P. 30(b)(6) and were held on the following dates: TJR on March 6, 2019; AJR on March 12, 2019; and Mr. Oliveira on March 14, 2019. See Ex. D for a copy of the deposition transcript of TJR, Ex. E for a copy of the deposition transcript of AJR, and Ex. F for a copy of the deposition transcript of Mr. Oliveira. | Admitted |
| 29. Pursuant to the Court's Order dated January 29, 2019, all discovery was to be completed no later than March 15, 2019. Docket Entry 38. | Admitted |
| 30. According to the Amended Complaint, for each cause of action, Plaintiff suffered damages in an amount not less than $400,000.00. Amended Complaint at ¶¶ 24, 28, Ex. A. | Admitted |
| 31. LMB could not provide a damages calculation for a violation of the non-solicitation and the misappropriation of trade secrets claims in the Amended Complaint. See Ex. D – AJR Tr. pp.145:23 - 146:6; 194:3-7. | Disputed<br>Defendant at all times refused to comply with Plaintiff''s reasonable discovery requests, taking the remarkable (and likely Rule 11 sanctionable) position that it was not required to produce any communications with customers of Plaintiff during the one year nonsolicitation period on the grounds these were "irrelevant". [22] Tim Declaration at ¶ 28, Risman email, Plaintiff Exhibit G;, Wallace letters Plaintiff's Exhibit H. As a result, Plaintiff was prevented from being able to calculate its "lost profits" before it received more specific knowledge of which of its clients |

---

[22] Plaintiff's response should be stricken since the undisputed fact is based upon Plaintiff's CEO's deposition testimony.

11

| | |
|---|---|
| | Defendant solicited.[23] |
| 32. LMB did not detail and itemize the calculation of its alleged damages in its Rule 26 Disclosure and its Response to Interrogatories. A copy of the Rule 26 Disclosure is annexed herein as Ex. I. A copy of LMB's Response to Mr. Oliveira's First Set of Interrogatories is annexed herein as Ex. J. | Disputed<br>As a matter of simple logic and experience, it is frequently impossible, as it was in this case, for a Plaintiff to set forth a concrete damage amount in its Rule 26 disclosure prior to discovery. Nor could Plaintiff do so in its interrogatory responses when Defendant had failed to produce relevant evidence of solicitation, as described in paragraph 31 above. Plaintiff sent proper post-deposition requests [24]( Tim Declaration ¶ 31; Plaintiff's post depo interrogatory requests in Plaintiff's Exhibit C ) |
| 33. LMB testified that investors do not pay to attend its events. See Ex. J, at Interrogatory number 3. | Admitted, however "Buy side" investors who do not pay to attend events are an integral part of marketing real estate events for both Plaintiff and Defendant, as all paying customers attend in order to meet them. Tim Declaration at ¶ 5; TJR Tr. 177: 2-10. |
| 34. LMB has no evidence Mr. Oliveira took hard copies of customer lists, and/or downloaded customer lists to his personal email or any electronic device during his employment with LMB. See Ex. E – AJR Tr. pp. 143:4-7. | Disputed.<br>Defendant again reiterates its assertions already made in Paragraphs 16 and 24.Defendant himself contradicts the assertion that he "never removed hard copies of LMB 'customer lists' or other data or downloaded LMB 'customer lists' or other data to his personal email, computer or any other electronic device," by the statement in paragraph 15 that he did in fact store such data on his personal cell phone.[25] This statement is otherwise misleading and false because Defendant had in his own memory a knowledge of names of and nonpublic information about Plaintiff's customers.[26] Tim |

---

[23] Plaintiff's response should be stricken since Plaintiff has not produced in its opposition papers a client list, an Excel spreadsheet or any documentary evidence establishing the identity of its clients, and/or any proof that Defendant solicited Plaintiff's clients.

[24] Defendant objects to this response on the grounds that the post-deposition request was overly broad, and improper because it was served ten days after the final discovery deadline.

[25] Plaintiff misrepresents an undisputed fact. Defendant never represented that he "stored" customer lists or other data on his phone. Therefore, Plaintiff's response should be stricken.

[26] Defendant objects to this response on the grounds that Plaintiff's response is not based on personal knowledge or Defendant's testimony, and is nothing more than a self-serving statement, therefore, the response should be stricken.

12

| | |
|---|---|
| | Declaration at ¶ 26. |
| 35. LMB has no evidence of an eyewitness to Mr. Oliveira physically removing LMB's trade secrets from the office. See Ex. E – AJR Tr. pp. 94:13-18. | Disputed<br>This paragraph is a variation on the claims made in 16, 24 and 34. Defendant himself contradicts the assertion that he "never removed hard copies of LMB 'customer lists' or other data or downloaded LMB 'customer lists' or other data to his personal email, computer or any other electronic device," by the statement in paragraph 15 that he did in fact store such data on his personal cell phone.[27] This statement is otherwise misleading because Defendant had in his own memory a knowledge of names of and nonpublic information about Plaintiff's customers.[28] Tim Declaration at ¶ 26. |
| 36. LMB has no exclusive contracts with any of its alleged "clients" (i.e. sponsors). See Ex.D – TJR Tr. pp. 175:25 - 176:3. | Admitted, however Plaintiff asks the Court to disregard this assertion as misleading, irrelevant, and asking for a legal conclusion.[29] Lack of an "exclusive" contract with them is not a defense to a claim that Defendant violated a one year nonsolicitation clause of his contract by contacting Plaintiff's customers.[30] |
| 37. LMB was unable to identify which "clients" are no longer participating in their events, and which participated in Mr. Oliveira's events. See Ex. E – AJR Tr. 106:8-12, 112:22 - 113:4, 154:20-155:11, 157:21-25. | Disputed<br>This statement is false. Early in the discovery process, Plaintiff provided Defendant with a list, designated Exhibit A to various discovery requests and letters, indicating which customers of Plaintiff were listed by Defendant on its web site and brochures as having participated in Defendant's May 2018 event. Plaintiff's Exhibit D.[31] |

---

[27] Plaintiff mispresents an undisputed fact. Defendant never represented that he "stored" customer lists or other data on his phone. Therefore, Plaintiff's response should be stricken.
[28] Defendant objects to this response on the grounds that Plaintiff's response is not based on personal knowledge or Defendant's testimony, and is nothing more than a self-serving statement, therefore, the response should be stricken.
[29] Defendant objects to this response on the grounds that Plaintiff improperly argues the relevancy of an undisputed fact, therefore, the response should be stricken.
[30] Defendant objects to this response on the grounds that Plaintiff improperly states a legal argument, and therefore, the response should be stricken.
[31] Plaintiff's response should be stricken since the undisputed fact is based upon Plaintiff's CEO, AJR's own deposition testimony. See Def. Ex. E – AJR Tr. 106:8-12, 112:22 - 113:4, 154:20-155:11, 157:21-25.

13

| | |
|---|---|
| 38. In its First Set of Interrogatories, Defendant requested a list of LMB's Institutional Real Estate Forum Clients (prospective and actual) for 2013-2017 and names of LMB's clients that Mr. Oliveira "provided services." LMB objected, and refused to provide the requested client information. See Ex. J, at Interrogatories numbered 8 and 20. | <u>Admitted in part, Disputed in part</u>. In its interrogatories, Defendant demanded production of Plaintiff's entire client list, including clients as to whom Plaintiff had made no assertion that they were solicited by Defendant. This matter was discussed before magistrate Lehrburger, who agreed Plaintiff did not have to produce this information. Defendant never moved to compel production. Wallace Declaration at ¶ 2. |

**<u>Plaintiff's Proposed Undisputed Material Facts and Defendant's Responses</u>**

39. On or about January 23, 2012, Defendant became a full time employee of Plaintiff, pursuant to a signed at will employment agreement (Defendant's Exhibit C) which provided for a starting salary of $10 per hour.

    <u>Admitted in part, disputed in part</u>.  Defendant signed an offer of employment for a paid intern role in 2013, and objects to the characterization of the letter as an "at will employment agreement." Employee Offer Letter ("Offer Letter") Defendant's ("Def") Exhibit ("Ex.") C; Def. Ex. E, AJR Tr. 96:18-20; Oliveira Declaration at ¶¶ 1 – 3.

40. This contract contains a section titled "Nonsolicitation of Clients and Contacts" which states: "You acknowledge that the Employer has invested substantial time and money in the development of the Employer's base of clients and contacts and that, by virtue of your employment with then Employer, you will gain confidential information about them that you would inevitably have to draw upon if you were to solicit them on behalf of a competing business. Hence, you agree that, during your employment and for twelve (12) months thereafter regardless of the basis for your separation of employment, you will not, on your own behalf or on behalf of anyone else, directly or indirectly, (1) solicit the business of or perform any services for, any Client of the Employer related to the services you performed for the client or for the Employer (as defined below) or (2) attempt to induce any Client of the Employer to terminate, change, reduce or to not extend an affiliation with the Employer or the Employer's subsidiaries and affiliates that exists at the time of cessation of your employment. For purposes of this agreement, "Clients of the Employer' shall mean any actual or prospective client of the Employer (i) for whom you performed services, or (ii) whose Confidential and Proprietary Information you had access to during the course of your employment with the Employer".  Defendant's Exhibit C.

    <u>Admitted.</u>

41. This contract also contains a clause entitled "Duty of Confidentiality" which defines as "trade secrets and confidential and proprietary information" various types of information including that "which gives the Employer... a competitive advantage" and "That is not generally known by other employers or individuals not employed by the Employer". Defendant's Exhibit C.

<u>Admitted.</u>

42. Defendant had prior telephone sales experience but none pertaining to Plaintiff's event business. Oliveira Tr. 8.:13-18. Tim Declaration at ¶ 8.

    <u>Admitted in part, disputed in part.</u>  Defendant specifically testified to experience in "Building Excel lists, cold calling, researching online to find names and people, cold calling, e-mailing,"  The same type of functions he performed for Plaintiff. Def. Ex. F, Oliveira Tr. 8:7-16.

43. Plaintiff's executives and salespeople trained Defendant to sell (and he did sell) Plaintiff's real estate investment events. Tim Declaration at 15; TJR Tr. 85:21-22; AJR Tr. 166:1-25, 167: 1-25.

    <u>Admitted.</u>

44. Defendant learned to generate leads from the Internet and LinkedIn (and did generate them) by formulating search terms likely to disclose candidates who would be interested in Plaintiff's events. Tim Declaration at  ¶ ¶ 10 – 15.

    <u>Admitted in part, disputed in part.</u>  Defendant did generate leads from the Internet and LinkedIn, but he learned to do so before starting his employment with Plaintiff.  Def. Ex. F, Oliveira Tr. 37:2-11.

45. Plaintiff then sent a specially drafted solicitation email to these leads. Tim Declaration at ¶ 13.

    <u>Admitted and disputed in part.</u>  Defendant objects on the grounds that this allegation does not refer to a specific client or clients, and is nothing more than an overgeneralization, not an undisputed fact.

46. Contact information for individuals who responded to this email was then distributed to Defendant and other sales people, who emailed and called them to further qualify them and to attempt to sell Plaintiff's real estate investment events. Tim Declaration at ¶ 15-18,

    <u>Admitted in part, disputed in part.</u>  Although it is likely that contact information may have been distributed to LMB employees, TJR does not allege that this statement is based upon personal knowledge, or that TJR (or which employee) distributed this information to Defendant.

47. During his five years of employment with Plaintiff, Defendant spoke with more than one thousand such prospects. Tim Declaration at ¶ 15.

    <u>Admitted in part, disputed in part.</u>  Although it is not disputed that Defendant spoke with a large number of "prospects," TJR has no personal knowledge to make said allegation, and

15

it is not supported by Defendant's transcript testimony. Lastly, Defendant was employed by Plaintiff for less than 4 years, January 2013 – September 2016. Oliveira Declaration at ¶¶ 1 – 3; Def. Ex. H.

48. In those conversations, Defendant acquired substantial nonpublic information about these prospects, such as their job descriptions, levels of spending authority, role in acquiring products like ours, ability to travel, general level of interest in attending, and type of events they found most appealing, and similar events they attended in the past, as well as their own hobbies and sports, and other non-public information which facilitated our "closing" them as customers. Tim Declaration at ¶ 15.

Denied. Defendant denies that this is a statement of fact. Defendant objects on the grounds that the term "non-public" is not a fact, but instead a legal conclusion, that Plaintiff's allegation is not supported with testimony or evidence obtained from Defendant, Plaintiff has no stated personal knowledge concerning this allegation, and Plaintiff does not identify the "prospects" and when the alleged conversations took place.

49. Defendant was trained to store all this information (and did so store it) in an Excel spreadsheet Oliveira Tr. 31:18; Oliveira Declaration ¶ 14.

Admitted in part, disputed in part. Although Defendant acknowledged that certain client information was stored in Excel spreadsheets, Defendant objects on the grounds that the term "non-public" is not a fact, but instead a legal conclusion, that Plaintiff's allegation is not supported with testimony or evidence obtained from Defendant that he stored "nonpublic information," Plaintiff has no stated personal knowledge concerning this allegation, Plaintiff does not identify the "prospects" and when those alleged conversations took place. Plaintiff did not attach to their motion papers, a single Excel spreadsheet prepared by Defendant. Lastly, there is no support in the record for the proclamation that Defendant was "trained" to store all this information by Plaintiff.

50. Defendant was informed by Plaintiff's executives and understood at all relevant times that this nonpublic information associated with the names, phone numbers and email addresses of customers and prospects was Plaintiff's stock in trade, on which its entire business was based, and was not to be shared with third parties or ever used for personal benefit. Tim Declaration at ¶ 17.

Disputed. TJR has no personal knowledge to make said allegation, and it is not supported by Defendant's transcript testimony. Plaintiff does not identify the "customer" and "prospects" and when those alleged conversations took place. Plaintiff did not attach to their motion papers, a single Excel spreadsheet prepared by Defendant, which contained the alleged "nonpublic information."

51. In his years with the company, Defendant was promoted to positions of trust and confidence, and given raises in compensation. Tim Declaration at ¶ 19.

Admitted in part, disputed in part. Defendant admits that based upon his hard work he

16

received additional responsibilities and compensation, however, the characterization that he was "promoted to positions of trust and confidence" is an unsupported legal conclusion.

52. When he resigned in 2016, Defendant was an executive of Plaintiff, responsible for all of Plaintiff's Latin American events, and receiving more than $150,000 in salary and bonus. Tim Declaration at ¶ 19.

    Disputed.  Plaintiff's self-serving allegation must be stricken, since it is a gross exaggeration i.e. "executive", "responsible for all…", and it is not based on Defendant's transcript testimony, payroll records or any other documents in the record.

53. Defendant resigned from Plaintiff's employ on September 23, 2016. Defendant's Exhibit H.

    Admitted.

54. As of the date he resigned, Defendant by his own admission had information in his personal cell phone relating to Plaintiff's customers. Oliveira Declaration at ¶ 16.

    Disputed. This allegation must be stricken in its entirety, Defendant never made that "admission," Plaintiff has no knowledge as to the contents of Defendant's phone, "as of the date he resigned," and Oliveira Declaration at ¶ 16 states "Mr. Oliveira never removed hard copies of LMB "customer lists" or other data or downloaded LMB "customer lists" or other data to his personal email, computer or any other electronic device, at any time during his employment with LMB."

55. Defendant also had in memory the names of customers with whom he had spoken while in Plaintiff's employ and nonpublic information about them. Tim Declaration at ¶ 26.

    Disputed.  Defendant objects to this allegation on the grounds that it is not based on personal knowledge or Defendant's testimony and is nothing more than a self-serving statement, therefore, the allegation should be stricken.

56. About one week before he resigned, Defendant incorporated Linkbridge Investors LLC, a New York limited liability company, the entity which he later used to sponsor the May 2018 real estate investment event and continues to use to sponsor other events in that business. Exhibit  ; Oliveira Declaration ¶ 23.

    Admitted.

57. In a conversation with Timothy Raleigh about his resignation, Defendant stated that he was launching an unrelated business, in which he would serve as a broker introducing investors to real estate developers. Oliveira Tr. 98: 21-25. Tim Declaration at ¶ 20.

    Admitted in part, disputed in part.  Defendant did in fact mention he was intending to launch a non-competitive business; however, the focus was in investor relations. Def. Ex.

17

F, Oliveira Tr. 98:18 – 99:9.

58. Raleigh stated that the new business as described would not directly compete with Plaintiff's real estate event business. Oliveira Tr. 98: 21-25; Tim Declaration at ¶ 20

    Admitted.

59. Raleigh never gave Defendant permission to contact Plaintiff's clients in connection with the new business. Tim Declaration at ¶ 21.

    Disputed. TJR testified that he had did not take issue with Defendant connecting investors with sell-side companies. Def. Ex. D, TJR Tr. 152:9-22

60. In any event, Defendant, if he ever intended to launch a deal broker business, never made any revenue at it and soon changed his business model. Oliveira Tr. 100:11-20; Tim Declaration at ¶ 23.

    Disputed. This is not an undisputed fact, but rather a mischaracterization of Defendant's testimony. See Def. Ex. F, Oliveira Tr. 100:11-20.  TJR has no stated personal knowledge to make said allegation, and it is not supported by Defendant's transcript testimony.

61. Within a one year period after the date of his resignation, September 23, 2016, Defendant changed the business model of Linkbridge Investors to sponsoring real estate investment events to which buy side investors would be invited for free, and sell side sponsors would pay to attend, in direct imitation of Plaintiff's business model. Oliveira Tr. 100:11-20; Tim Declaration at ¶ 23.

    Admitted, disputed in part.  Defendant admits that he changed his business model. However, TJR has no stated personal knowledge as to what that new business model entailed, and the allegation mischaracterizes Defendant's transcript testimony.

62. Within one year after September 23, 2016, Defendant, his employees and agents began soliciting Plaintiff's buy and sell side customers in order to obtain their participation in Defendant's May 2018 event. See Plaintiff's Exhibits A and B.

    Disputed. This allegation is not supported by evidence.  Plaintiff's Exhibits A and B are documents prepared by Defendant, not Plaintiff, and are not proof that the entities identified were Plaintiff's "customers" at any time, or whether they were buy-side or sell-side.

63. According to Defendant's published website, he obtained the participation of many of Plaintiff's customers at his May 2018 event. Plaintiff's Exhibit I containing excerpts of Defendant's website for the May 2018 event; Tim Declaration at ¶ 7.

    Disputed. This allegation is not supported by evidence. Plaintiff's Exhibit I was prepared by Defendant, not Plaintiff, and is not proof that the entities identified were Plaintiff's

"customers" at any time (i.e. before, during or after the May 2018 event).

64. As a direct result of Defendant's solicitation of Plaintiff's customers, Plaintiff's gross revenues from four major events in 2016 was $655,095.00, versus only $198,984.00 in 2017—a decrease of $456,111 which is roughly equivalent to Plaintiff's actual loss for the year 2017, $378,669. Tim Declaration at 35-37; Plaintiff's Exhibit E.

<u>Disputed.</u> This allegation is a legal conclusion, not a factual statement, and it is not supported by evidence. Plaintiff never produced the financial records in support of Exhibit E prior to the final discovery deadline, or thereafter in their motion papers, and therefore, Exhibit E should be stricken from the record since it is inadmissible hearsay. There is no evidence in the motion record, as to who were Plaintiff's "customers" during Defendant's employment with Plaintiff, that Defendant provided "services" to the alleged "customers," or that Defendant had any "confidential or proprietary information" from the Excel spreadsheets (which were not produced) about the entities that attended the May 2018 event.

Dated: New York, New York
May 28, 2019

        Respectfully submitted,

        RISMAN & RISMAN, P.C.

        *Jeffrey Risman*
        Jeffrey Risman, Esq.
        Attorneys for Defendant
        30 Vesey Street, 6th Floor
        New York, NY 10007
        (212) 233-6400